**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

Case No. _____ **05-60813**

**CIV-MOORE**

MAGISTRATE JUDGE GARBER

FLORIDA ALLIANCE FOR RETIRED
AMERICANS, BROWARD ANTI-WAR
COALITION, BROWARD COUNTY GREEN
PARTY, GREEN PARTY OF FLORIDA,
HAITI SOLIDARITY, and LAKE WORTH
FOR GLOBAL JUSTICE,

                    Plaintiffs,

v.

CITY OF FORT LAUDERDALE, a municipal
entity; and BROWARD COUNTY, a political
subdivision of the State of Florida,

                    Defendants.

**PLAINTIFFS' VERIFIED COMPLAINT FOR INJUNCTIVE AND**
**DECLARATORY RELIEF FOR VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983 AND FIRST AMENDMENT**

**PRELIMINARY STATEMENT**

This is a lawsuit seeking declaratory relief and injunctive relief for violation of Plaintiffs'
First Amendment rights. Plaintiffs, comprised of organizations whose members are concerned about
current social and economic issues affecting the region and the world, challenge several provisions
of the Fort Lauderdale Municipal Code ("**FtL Code**" or "**Code**"), which impose onerous permit
requirements on the right to engage in expressive activity in quintessential public fora in the City.
In addition, Plaintiffs challenge provisions that make it a crime to be on a public sidewalk if it
"annoys" or "obstructs" anyone else. Plaintiffs also challenge a recently enacted ordinance, entitled
"Parade and Public Assembly Prohibitions," sweeping within its ambit conduct long held to be
protected under the First Amendment. Finally, Plaintiffs challenge the "security perimeter" for the

upcoming Organization of American States (the "**OAS**") ministerial meetings, prohibiting those who wish to make known their views on important issues of public concern at the OAS meetings from coming closer than a distance of approximately seven (7) football fields from the meeting site, at the nearest point.

## JURISDICTION AND VENUE

1.      This action seeks declaratory and injunctive relief pursuant to 42 U.S.C. §1983, for ongoing and threatened injury to the First Amendment rights of individuals and organizations engaged in lawful expressive activity within the City of Fort Lauderdale. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343 and the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2201.

2.      Venue is proper in the Southern District of Florida, Fort Lauderdale Division, under 28 U.S.C. §1391(b). All parties reside in the Southern District, all Defendants are located in the Fort Lauderdale Division, and all of the acts or omissions complained of herein have occurred or will occur in the Fort Lauderdale Division.

## INTRODUCTION

3.      The City of Fort Lauderdale (the "**CITY**") employs a permit scheme for expressive activity in public fora that is both an unlawful prior restraint and an unreasonable time, place and manner regulation. Adopted in 1953, it requires a "license" for even a "minor outdoor event," defined as a gathering of less than 500 people, with no minimum number. The ordinance imposes a lengthy advance filing requirement for protected expression, but is absolutely devoid of any standards to guide the decision of whether and under what conditions a permit will issue, how long public officials are allowed to decide a permit, how much insurance may be imposed, and what cost of security may be imposed on expressive activities. The absence of any standards in these key areas means that the ordinance vests public officials with unbridled discretion and invites content-based decisions based on the nature of the speaker. This is a forbidden basis on which to rest a permit scheme that requires a license to engage in protected speech. The fatal constitutional infirmities in the original permit scheme are compounded by the recently enacted emergency ordinance, distinguishing between speakers in public fora on patently content-based grounds. Finally, Defendants have announced plans for a mile-wide "security perimeter" around the site of the OAS meeting, keeping Plaintiffs out of sight and, no doubt, out of mind of the delegates. Each of these measures

2

violates Plaintiffs' First Amendment rights by limiting, impermissibly, their rights to speech, association, assembly and petition. For these reasons, Defendants' must be enjoined from prohibiting the lawful exercise of First Amendment rights in Fort Lauderdale and at the Convention Center during the OAS meetings.

## PARTIES

**Plaintiffs**

4.     Plaintiff **FLORIDA ALLIANCE FOR RETIRED AMERICANS ("FLARA")** is a not-for-profit corporation with an office in Wellington, Florida. Ex.1, Declaration of Tony Fransetta ("Fransetta Decl.") ¶2. **FLARA** is an affiliate organization of over ninety (90) groups of retired Floridians. *Id.* The combined membership of its affiliate groups is now over 192,000 persons. *Id.* **FLARA** provides its members with information about current social and political issues that directly affect the well-being of seniors. In recent years, it has been involved with issues relating to "free trade" agreement between nations because **FLARA** considers the flight of jobs and capital from this nation to be endangering the existence of many businesses in the U.S., thereby affecting the pension benefits and financial well-being of Florida's retirees. Ex. 1 [Fransetta Decl. ¶¶4-5]. As a result of the group's deep opposition to the Free Trade Area of the Americas ("FTAA"), in November 2003 **FLARA** expended thousands of dollars to bring busloads of retirees to Miami. Fransetta Decl. ¶6. There, approximately 1,000 members of **FLARA** joined in the march and rally sponsored by the AFL-CIO on November 20, 2003 at the amphitheater on Biscayne Blvd to protest the FTAA meetings and the proposed selection of south Florida as the site of the FTAA headquarters. Ex. 1 [Fransetta Decl. ¶¶6-9]. **FLARA** is once again intending to bring members to rally and demonstrate at the upcoming meeting of the OAS in Fort Lauderdale. Ex. 1 [Fransetta Decl. at ¶¶12-14].

5.     Plaintiff **BROWARD ANTI-WAR COALITION ("BAWC")** is a non-partisan, unincorporated association in Broward County. **BAWC** was formed in 2001. Its goal is to further peace and social justice through nonviolent actions. Ex. 4 [Sanders Decl. at ¶4]. **BAWC** is one of the principal organizers for Alliance for Justice in the Americas ("**AJA**"), an umbrella organization of activist groups planning protest activities relating to the meeting of the OAS at the Broward Convention Center in early June, 2005. Ex. 6 [Smithers Decl. at ¶2]. In early May, **BAWC** submitted an Outdoor Events Application to the City of Fort Lauderdale on behalf of **AJA** and **BAWC**, seeking a permit from the City for a march and rally scheduled for June 5, 2005. Ex.6 [Smithers Decl. ¶3].

3

**BAWC** has been holding weekly vigils since May 2002 in front of the Federal courthouse in downtown Fort Lauderdale (corner of Broward Boulevard and Northeast Third Avenue) at 5 p.m. Ex.6 [Smithers Decl. ¶5]; Ex. 4 [Sanders Decl. ¶5]. **BAWC** has participated with other groups in events at the Torch of Friendship  in downtown Miami, including an Inauguration Day protest, on January 20, 2005,  a protest on the second anniversary of the Iraqi invasion, on March 19, 2005, and a May Day observance on May 1, 2005. *Id.* Protest activities in Broward have included a Tax Day protest of taxation for wars at the Broward Main Post Office on April 15, 2005, and a protest coinciding with the Air & Sea Show on April 30, 2005. *Id.*   Most of these events have involved more than eight people, which would subject members of **BWAC** to the restrictions in the recently enacted emergency law regulating parades and "public assemblies," Fort Lauderdale Code §26-202.1. The **BAWC** wants to set up a small tent "city" outside the OAS meetings to symbolize the struggles of indigenous peoples in the OAS member states, who live in substandard conditions. Ex. 6 [Smithers Decl. ¶11]. **BAWC** also wants to demonstrate with a cage to protest the torture of prisoners at Guantanamo. *Id.*

7.      Plaintiffs **GREEN PARTY OF FLORIDA** and **BROWARD GREENS** (collectively "**GREENS**") are chartered affiliates of the Green Party of the United States, a national political party recognized by the Federal Elections Committee. Ex. 7 [Steiner Decl. ¶2].  The Green Party espouses political action in accordance with its "Ten Key Values," including: grassroots democracy; social justice; ecological wisdom; non-violence; decentralization; community-based economics & economic justice; gender equity; respect for diversity; personal & global responsibility; future focus and sustainability. Ex.7 [Steiner Decl. ¶4]. The **GREENS** oppose current and proposed regional trade agreements, such as the North American Free Trade Agreement ("NAFTA"), Free Trade Area of the Americas ("FTAA") and the Dominican Republic/Central America Free Trade Agreement ("DR / CAFTA" or "CAFTA"). Ex. 7 [Steiner Decl. ¶5]. These agreements violate most of the precepts of the Green Party as they do not promote grassroots democracy or social justice, have weak environmental provisions, encourage by their terms centralization rather than decentralization, and hinder economic justice. *Id.*  In November 2003, over a thousand Green Party members traveled to Miami from throughout Florida and the rest of the United States to demonstrate peacefully at the FTAA Ministerial Meetings. Ex. 7 [Steiner Decl. ¶6].   Approximately 300 to 600 members of the

4

Green Party are expected to attend the OAS march and rally on June 5th, and the Florida Green Party and the Green parties of Miami-Dade, Broward, and Palm Beach counties have endorsed the proposed protests against the OAS General Assembly organized by the Alliance for Justice in the Americas ("AJA") outside of the Broward County Convention Center in early June, including a large demonstration on June 5. Ex. 7 [Steiner Decl. ¶7].

8.     Plaintiff **HAITI SOLIDARITY** is a not-for-profit corporation with an office in Miami, Florida. Ex. 9 [Thompson Decl. ¶2]. **HAITI SOLIDARITY**'s purpose is to raise awareness in the United States regarding issues of democracy and human rights in Haiti, by participating in various educational and protest activities. Ex. 9 [Thompson Decl. ¶3]. **HAITI SOLIDARITY** has participated in numerous demonstrations throughout the South Florida area in the past several months, including a picket of the Miami-Dade Chamber of Commerce, at the Marriott hotel in downtown Miami, in April 2005, pickets of the Canadian and Haitian consulates in March and April of 2005, and several rallies at the Torch of Friendship on Biscayne Boulevard in downtown Miami. *Id.* There have been no arrests at any of these events, which have all been peaceful demonstrations. *Id.* Haiti is one of the member states of the OAS. **HAITI SOLIDARITY** takes the position is that the OAS has failed to take a strong position in support of democracy in Haiti and in opposition to the numerous human rights abuses occurring daily. Ex. 9 [Thompson Decl. ¶4]. Moreover, the group believes that the support of the OAS for free trade agreements such as the FTAA is contrary to the right of workers to organize unions and demonstrate, and the Haitian government continues to use arbitrary arrests and intimidation to preclude workers from organizing unions and demonstrating. *Id.* **HAITI SOLIDARITY** wants to reach representatives of the OAS nations to express its opposition to human rights abuses and anti-democratic political developments in Haiti, and to educate these persons regarding the need for implementation of protections for democracy and human rights. Ex. 9 [Thompson Decl. ¶6]. **HAITI SOLIDARITY** plans to join other groups in participating in the march and rally on June 5, 2005. *Id.*

9.     Plaintiff **LAKE WORTH FOR GLOBAL JUSTICE ("LWGJ")** is a collective committed to taking action for social justice whose members have engaged in numerous projects of a civic nature, including a variety of community-based activism. Ex. 8 [Stevens Decl. ¶3]. Lake Worth is located approximately 40 miles north of Fort Lauderdale. *Id.* Lake Worth for Global Justice

intends to participate in demonstrations at the OAS, scheduled for June 5th in Fort Lauderdale.  Ex. 8 [Stevens Decl. ¶7].  LWGJ plans to stand on the sidewalk and in parks, to distribute literature before the June 5th demonstration.  Ex. 8 [Stevens Decl. ¶8].  On June 5th, members of the group plan to bring banners, large puppets, stilt-walkers, and large signs to the Broward County Convention Center ("the **Center**") area to protest the policies of the OAS.  *Id.*

10.    Defendant City of Fort Lauderdale ("**CITY**") is a Florida municipal corporation.  It is the legal and political entity responsible for the actions of the City Manager and the Fort Lauderdale Police Department ("**FLPD**"), which is a City department, and the officers and employees of these entities.  The City is sued in its own right and on the basis of the acts of its officers, employees, and agents, which were taken pursuant to the City custom and policy.

**Defendants**

11.    Defendant **BROWARD COUNTY** ("**COUNTY**")  is a political subdivision of the State of Florida.  It is the legal and political entity responsible for the actions of the Broward County Board of County Commissioners ("**BBCC**").  It owns and operates through a third-party management company the "**Center**", located within Port Everglades, Florida  The Center was built with the primary purpose of promoting and facilitating events and activities which generates substantial economic benefits  for the County.   **BBCC** also operates The **PORT OF THE EVERGLADES** ("**PORT**"), a seaport located within the cities of Fort Lauderdale, Hollywood and Dania Beach, and an unincorporated area of the **County**. The **PORT** is operated under the authority of the **BBCC**.  Law enforcement for the **PORT** is contracted by the **COUNTY** with the Broward Sheriff's Office ("**BSO**"), a constitutional office under the laws of the State of Florida.

## GENERAL ALLEGATIONS

**The OAS Meeting:**

12.    The **OAS** is scheduled to hold the 35th General Assembly of its member states from June 5 to 7, 2005 at the **Center**, located in the **PORT** and owned by Defendant **COUNTY**.  The **OAS** is a global organization that brings together Western Hemisphere nations for the stated purpose to strengthen cooperation and advance common interests.  The conference intends to address such as issues as "fulfilling the promise of the Inter-American Democratic Charter for all of the peoples of

6

the Americas; promoting a democratic culture, . . . improving the status of indigenous peoples; strengthening the inter-American human rights protection system; . . . and making 2006 the Inter-American Year of the Fight Against Corruption." *See City of Fort Lauderdale - Organization of the American States General Assembly*, http://ci.ftlaud.fl.us/oas/index.htm.

13.     In anticipation of the meeting, the City enacted an emergency ordinance, codified at FtL Code §26-202.1, imposing limits on demonstrators and supplementing existing ordinances, which are unconstitutional under long-standing United States Supreme Court precedents.

14.     Defendants have  also cordoned off a sweeping area"security perimeter" around the OAS meeting site (*i.e.*, the **Center**), preventing demonstrators from coming within 2000 feet of the **Center** at the closest point of the "security perimeter."  In effect, the entire **PORT** has been turned into a "no-protest" zone.

**The Fort Lauderdale Code Provisions:**

15.     Fort Lauderdale has a largely antiquated permit scheme, adopted in 1953, which codifies laws repeatedly condemned as violative of First Amendment rights in quintessential public fora.  The following sections of the Fort Lauderdale Code are challenged in this action:

a.     **Fort Lauderdale Code §§ 15-181 to 15-185 "OUTDOOR EVENTS":**

(1).     FtL Code §15-181 requires a permit for any "outdoor events," providing that:

> (a) Outdoor events shall mean concerts, festivals, races, walks, . . . and other similar outdoor events, whether operated totally outdoors, on stage, under tents, or with the use of temporary buildings or structures, to which members of the public are invited as participants or spectators. Outdoor events shall not be permitted to locate or operate in the city except as provided in this article.

(2).     FtL Code §15-182(a) provides that:

> [t]he city commission may, after an application has been filed and reviewed, and after passage of an appropriate motion, permit events coming under the provisions of this article to operate within the city for temporary periods of time.  Such application shall be filed not less than ninety (90) days in advance. . . .  The city manager may establish a late fee to be imposed on applicants that file within such ninety-day period.

(3).     FtL Code §15-182(b) provides that the City's "parks and recreation department" to review and approve the application."  Once this is done, the City provides the

7

applicant with an agreement "incorporating the terms and conditions listed in section 15-183 and such other terms and conditions as the city may specify."

(4).    FtL Code §15-182 (c) provides that: [n]o person or organization shall hold an outdoor event prior to the delivery to the city of properly executed copies of the agreement and certificate of insurance provided for in this article.

(5).    FtL Code §15-183 sets out the terms and conditions for an outdoor event. Specifically, requiring, *inter alia*, that:

> (a)    The police department may require the applicant to provide and pay for security personnel for crowd control and traffic direction purposes. Section §15-183(b)(6)
>
> (b)    The applicant shall provide a certificate of insurance satisfactory to the office of the risk manager, such insurance to be comprehensive general liability insurance in a minimum amount of one million dollars ($1,000,000.00) . . .  The applicant shall also agree to indemnify and hold harmless the city for any damage to person or property which might occur during or as a result of the operation of the outdoor event. Section §183(b)(7).

(6).    FtL Code §§15-184 and 15-185 provide the exceptions from to the "outdoor event" permit requirement. Section 15-184(b) sets somewhat lower requirements for a "minor outdoor activity" in that:  A "minor outdoor activity" means "an activity which will be attended by less than five hundred (500) persons, [and] have a limited impact on traffic, parking and noise .... A "minor outdoor activity sponsored by a charitable or non-profit organization or civic, neighborhood or homeowner association shall be exempted from the provisions of section 15-

8

183(b)(7) of this article." [Exemption applies to insurance, indemnification and hold harmless, but not costs imposed by (b)(6).]. "The sponsor of a proposed minor outdoor activity shall submit all details of such proposed activity to the parks and recreation department at least thirty (30) days in advance of the event. Even a "minor outdoor activity," however, is required to pay for costs of police protection and meet all advance-filing requirements.

    **b.**    **Fort Lauderdale Code §16-71: "DISORDERLY CONDUCT"**

    (1).    FtL Code §16-71(a) makes it an offense "for any person to commit an act of disorderly conduct" in the **CITY**.

    (2).    FtL Code §16-71(b) provides the definitions of "disorderly conduct." "A person shall be guilty of disorderly conduct if his conduct shall directly tend to or does create or cause public danger, alarm, disorder, nuisance, or if his conduct directly tends to or does create public danger, alarm, disorder, or nuisance and by such conduct he knowingly:"

    (a).    FtL Code §16-71(b)(1) makes

> a disturbance of the public order by an act . . .[which] makes an improper noise, riot, disturbance, breach of the peace or diversion which directly tends to or does create a breach of the peace within the city; or collects with others in bodies or crowds for any purpose, in a manner which hinders, impedes or obstructs normal traffic along streets, sidewalks, or other public ways, and annoys or disturbs

9

other persons[.]

(b)     Hinders, molests or annoys persons passing along a street, sidewalk, crosswalk or other public way. Section 16-71(b)(8)

(3).     FtL Code §16-71(b)(8) provides an "*Exception*." "This section shall not apply to peaceful picketing, public speaking or other constitutionally protected speech not in contravention of other laws."

(4).     FtL Code §16-71(e) expressly holds that a police officer may be a victim for the purposes of the "disorderly conduct" provisions.

(5).     FtL Code §16-71(f) makes a violation of this Chapter punishable pursuant to section 1-6 of the Code, which provides for a penalty of $1,000 dollars, up to sixty (60) days in jail, or both.

    c.     **Fort Lauderdale Code §16-73: "Assemblies"** makes it

> unlawful for any persons to stand, congregate, or assemble upon any of the sidewalks or corners of the streets, or in, around or about the parks or other public places or buildings in this city to the annoyance of or hindrance to the passersby. It shall be the duty of the chief of police or any other officer under this direction to order all persons violating this section to move away or disperse. Whoever neglects or refuses to obey such order shall be punished as provided for in section 1-6 of this Code.

    d.     **Fort Lauderdale Code §26-202: "Permits for parade, processions . . ."** provides that: "[n]o procession, or parade, excepting the forces of the United States Armed Services, the military forces of this state, and the forces of the police and fire departments, shall occupy, march, or proceed along any street or roadway except in accordance with the permission issued by the police chief and such other ordinances that may apply."

10

e.     **April 19, 2005 Emergency Ordinance Adding Code §26-202.1 "Parade and Public Assembly Prohibitions"**

On April 19, 2005, Defendant **CITY** adopted an emergency ordinance amending the Fort Lauderdale Municipal Code to add a new section, restricting possession of certain items only by persons participating in parades and assemblies, as those terms are defined in the new Code provisions.  CODE §26-202.1.   A violation of this provision is punishable by a fine of $500, a sentence of 60 days in jail, or both. Sections 26-202.1(e) and 1-06.

(1).     FtL Code §26-202.1(a)(1) defines a "Parade" as

a coordinated movement, except a coordinated movement directly associated with a practice or rite of a well-recognized bona fide religious sect or organization, of eight (8) or more pedestrians or vehicles upon the streets, within the city with an intent of attracting public attention that interferes with or has a tendency to interfere with the normal flow or regulation of traffic upon the street.

(2).     FtL Code §26-202.1(a)(2) defines a "Public Assembly" as

a gathering, except a gathering directly associated with a practice or rite of a well-recognized bona fide religious sect or organization, outside a structure, of more than eight (8) persons for a common purpose at a public place within the City that continues in existence for more than thirty (30) minutes, with the intent of attracting public attention that interferes with or has a tendency to interfere with the normal flow or regulation of pedestrian or vehicular traffic upon any public facility, street, sidewalk, swale, alley, park recreation area or other place or building.

(3).     FtL Code §26-202.1(b)(1)-(10) makes it unlawful for any person participating in a "parade" or "public assembly" from possessing various items, most of which are lawful in any other context. Section §26-202.1.  Section 26-202.1(b) sets forth 10 limitations on materials and items that may be possessed by a participant in a parade or public assembly, as those terms were defined in the preceding section, including various weapons, the types of materials for signs and sign supports, etc. Most of these proscribed categories are so broad that they criminalize carrying a bicycle lock, an umbrella, a Swiss Army knife, a soft drink bottle, a baseball bat and other common items that are lawful unless the person is participating in a parade or assembly of more than

11

30 minutes in duration.

**The "Security Perimeter" At the OAS Meeting Location**

16.     Defendants have announced a so-called "security perimeter" that shuts off physical access to a massive area adjoining the **Center**. Defendants, however, have not announced the final parameters of the "security perimeter," including the perimeters of the area, or whether a "soft" area will be open to pedestrians, even if closed to vehicular traffic.

17.     Although the final boundaries of the "security perimeter" have not been announced, the practical effect of the "security perimeter," at it has been discussed publicly by law enforcement, is to create a "no-protest" zone unlike any ever see before. A map of the area, showing the proposed "security perimeter," is attached at Exhibit 11. A video of the area is included at Exhibit 2c.

18.     The proposed security zone is slightly more than one mile wide (west to east), with the distance of the western perimeter approximately 3/10 of a mile (from SE 15th Street to the **Center**), and the eastern buffer about 7/10 of a mile (from Mayan Drive to the **Center**). Ex. 2 [Keating Decl. ¶6]. Specifically, SE 15th Avenue, the western edge of the "security perimeter," it is 1,012 feet to Eisenhower Blvd., 1,400 feet to the Port Yacht Club driveway, and 1,771 feet to the Causeway, just north of the **Center**. Ex. 2b

19.     On the southern side, the **Center** is located within a 10' tall security fence. Ex. 2 [Keating Decl. ¶6]. The distance from the wall of the 17th Street Causeway to the **Center** Security Fence is 332 feet, greater than the length of a football field. The total length of the proposed OAS security perimeter on the western edge, from the SE 15th Avenue edge to the **Center** fence is 2,130 feet. Ex.2b.

20.     The total length of the eastern side of the proposed "security perimeter" from Mayan

Drive to the **Center** fence is 4,188 feet. *Id.* On the remaining two sides, the **Center** is bounded by the Inland Waterway and, to the north by the Portside Yachting Center ("**PYC**"). *Id.*

21. Because of the land within the area designated as Port Everglades, all of which is within the "security perimeter," it would not be possible for demonstrators from outside of the southern portion of the security zone to been seen or heard by their intended audience. Ex. 2 [Keating Decl. ¶6]; Ex. 4 [Sanders Decl. ¶9].

22. Defendant **CITY** has disseminated conflicting information about the "security perimeter" and other plans for a law enforcement response at the **OAS** meetings. In briefings for members of the business community, **FLPD** officers have stated that the plans that there is now no plan to shut down SE 17th Street, although the bridge will be restricted for vehicular traffic to exclude the need to search vehicles travelling on the bridge from June 4 to June 7 since that route will be driven by delegates to the **OAS** meetings at the **Center**. Ex. 3 [Morgan Decl. ¶5]. Members of the business community were also informed that by the **FLPD** supervisor that some **FLPD** officers had exaggerated the threat from demonstrators. *Id.* at ¶8.

**Plaintiffs' Application for a Permit to Demonstrate During the OAS Meetings**

23. On May 3, 2005, Plaintiff **BAWC** submitted a permit application for an Outdoor Event to the Fort Lauderdale Parks and Recreation Department. Ex. 6 [Smither Decl. at ¶3]; Exhibit 6a. The original application sought approval for a march route, culminating in a rally in a large parking lot located adjacent to the **PYC** and the **Center**. *Id.*

24. On May 4, 2005, Plaintiffs sent an email to Sue Molnar, Outdoor Event Coordinator for the **CITY** Parks and Recreation Department, requesting that the **CITY** act on the permit within 48 hours. The 48-hour time limit was the length of time for acting upon applications set by Judge

Graham in a recent challenge to the City of Miami's parade and assembly permit scheme. *See Lake Worth for Global Justice, et al. v. City of Miami, et al.*, Case No. 04-20262-CIV-GRAHAM. Ex.12. Ms. Smither received a response email from Ms. Molnar, informing her that the application had been sent to the Police Department for review because of the nature of the activity being planned. Ex. 6 [Smither Decl. at ¶4]; Ex. 6b.

25.    On May 6, 2005, Plaintiffs received a telephone call from Major Robataille of the **FLPD**, informing Ms. Smither that, while the march route was not a problem, the requested site for the rally was under the control of **COUNTY**. Major Robataille provided Ms. Smither with the contact numbers for the proper person with the **BSO** to contact about the requested site. Ex. 6 [Smither Decl. ¶5].

26.    On May 9, 2005, Plaintiffs sent an e-mail to the Fort Lauderdale City Attorney and Chief Roberts of the **FLPD**, informing both of them of the messages left for the **BSO** and requesting a decision on the permit application by the close of business on May 9. Ex. 6 [Smithers Decl. ¶6]; Ex. 6c. On May 9, Plaintiffs also hand delivered a letter to Chief Cummings of the **BSO**, asking for use of the parking lot adjacent to the **Center** for a rally site and seeking information on the permit process, including any other government entities whose approval was required. Ex. 6 [Smithers Decl. ¶7]; Ex.6d.

27.    On the evening of May 9, Plaintiffs received an email from **FLPD** Major Robataille, informing them that the City would not issue a permit for the march until and unless the **COUNTY** acted upon the request for the rally in the parking lot adjacent to the **Center**. Ex. 6 [Smithers Decl. ¶8]; Ex. 6e.

28.    On May 10, Plaintiffs received a message from **BSO** Chief Cummings, stating that he

14

would be happy to work with **AJA** regarding the requested rally site. Ex.6 [Smithers Decl. ¶9]. Plaintiffs immediately returned the call, leaving a message for Chief Cummings and leaving the cellular telephone number for Ms. Smithers. *Id.* To date, no one from **BSO** has responded. *Id.*

29.    On May 6, when the **AJA** learned that their first choice for a rally site was subject to approval by the **COUNTY**, Plaintiffs submitted a letter to **FLPD** Chief Bruce Roberts, supplementing their original application by requesting several additional sites for their planned activities during the **OAS** meetings, including a parking lot under the SE 17th Street bridge and the access road between SE 17th Street and the Portside Yachting Center. Ex. 5 [Schlackman Decl. ¶10]; Ex. 5E. No response has been received to the request for a permit from the **CITY** for either of the supplemental sites requested. Ex.5 [Schlackman Decl. ¶10].

30.    Plaintiffs have attempted to ascertain who is responsible for issuing permits for expressive activity in the **CITY** and **COUNTY**. To this end, on May 9, 2005, Plaintiffs propounded a Public Records Request to the Defendant **CITY** asking for any guidelines used by the Parks and Recreation Department for consideration of permit applications. Ex. 5 [Schlackman Decl. ¶6]; Ex.5d. Plaintiffs received a response to this request, prepared jointly by Parks and Recreation and the **FLPD**, but no documents contained any guidelines. Ex.5e. Also on May 9, 2005, Plaintiffs propounded a Public Records Request to the **FLPD**, seeking guidelines used for consideration of permit applications. Ex. 5 [Schlackman Decl. ¶6]; Ex.5b. Plaintiffs' counsel, Mara Shlackman, received a telephone call on from Nancy Dzoba, Public Safety Communications Manager for the **FLPD**, advising the the **FLPD** has no policy or procedure governing issuance of permits for parades and assemblies because the **FLPD** does not issue such requests, even though the Parks and Recreation Department informed Plaintiffs on May 4 that their permit request had been forwarded to the **FLPD**

because the Parks Department did not handle such reqeusts.  Ex. 5 [Schlackman Decl. ¶6]; Ex. 6B.

Ms. Dzoba advised that the office of the City Attorney be contacted for such information. *Id.*  On May

16, 2005, Ms. Shlackman received a letter from Ms. Dzoba, repeating what had been stated in the

telephone conversation of May 11, 2005.  Ex. 5 [Schlackman Decl. ¶6]; Ex.5C.  On May 11, 2005,

Plaintiffs hand-delivered a Public Records Request to the **PORT**, seeking, *inter alia*, any guidelines

established by the **PORT** and/or the **COUNTY** for consideration of permit applications for

demonstrations, rallies, assemblies, and similar expressive activity.  Ex. 5 [Schlackman Decl. ¶7];

Ex.5D. In response to this request,  an Assistant County Attorney telephoned Ms. Shlackman and

informed her that the **COUNTY** had no provisions relating to expressive activity at the **PORT**.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE FIRST AMENDMENT PURSUANT TO 42 U.S.C. §1983**

**By All Plaintiffs Against Defendant City of Fort Lauderdale**

31.    The allegations of paragraphs 1 through 30 are incorporated into the First Claim for

Relief as though fully set forth herein.

32.    Fort Lauderdale Code §§16-71(8), 16-73, §16-71(b)(1) and 25-4, violate the First

Amendment as overbroad restrictions on the use of public fora that prohibits all "obstruction" of free

passage on public sidewalks based, *inter alia*, on "annoyance" of pedestrians and would, necessarily,

impose the risk of punishment for engaging in protected expressive activities in these fora, including

picketing and protesting.

33.    Fort Lauderdale Code §§15-181 through 15-184 and 26-202 violate the First

Amendment as an impermissible prior restraint on expression in public fora.  The ordinances impose

an advance filing requirement for a license from the government to speak without providing adequate

standards to guide the exercise of discretion by public officials and without the necessary procedural safeguards to protect against content-based decision. They lack any standards for determining whether to grant or deny a permit request and how long public officials may take to consider a permit application, inviting content-based decision making and preventing review of denials and onerous conditions by delay.

34.     Fort Lauderdale Code §§15-181 through 15-184 and 26-202 violate the First Amendment because they do not constitute a content-neutral reasonable time, place or manner restriction. The application of the ordinances may depend on the content of the speech and its terms are not narrowly drawn to avoid restricting more speech than is necessary to further the **CITY**'s compelling interests in regulating speech in public fora. Moreover, because the Code requires a license to engage in virtually any speech activities in archetypal public fora in the **CITY** and does not provide for "spontaneous" expressive activities in response to timely events, it leaves no ample alternatives for communication.

35.     Fort Lauderdale Code §§15-181 through 15-184 and 26-202 violate the First Amendment as it imposes an unconstitutional condition on the issuance of a permit to engage in protected expression in traditional public fora in the **CITY** by requiring permittees to assume, in advance of the event, all liability not only for their own acts and omissions, but for the potentially unauthorized acts and omissions of third parties related to the expressive activity, and the acts and omissions of all **CITY** employees, including the violation of civil rights by the police.

36.     Fort Lauderdale Code §§15-181 through 15-184 and 26-202 are unconstitutional as they vest public officials with the unbridled discretion to make content-based decisions to grant, deny, or impose burdensome conditions on a permit to engage in core expression in quintessential public

fora.

37.     Fort Lauderdale Code §26-202.1 violates the First Amendment because it does not constitute a content-neutral reasonable time, place or manner restriction. The application of the ordinance may depend on the content of the speech and its terms are not narrowly drawn to avoid restricting more speech than is necessary to further the **CITY**'s compelling interests in regulating speech in public fora.

38.     Defendant **CITY**'s ordinance set forth above violate Plaintiffs' rights to freedom of speech, freedom of assembly, freedom of association and freedom to petition the government for redress of grievances, all rights protected by the First Amendment and made applicable to the states and local government by the Fourteenth Amendment and 42 U.S.C. §1983.  The acts complained of herein were directed toward intimidating Plaintiffs and others who intend to engage in lawful expressive activity, chilling the exercise of these protected expressive rights by, among other means, deterring Plaintiffs and others from associating in the lawful exercise of their constitutional rights.

39.     As a consequence of these actions, Plaintiffs and others fear they will be impeded in their efforts to carry out lawful expressive activities in conjunction with the OAS meetings and are impeded in their ability to organize for, and carry out, the demonstrations and other activities to protest globalization, job loss and other issues related to the OAS meeting.  They are at risk of not being able to communicate their message if the ordinances are enforced. Accordingly, Plaintiffs have and will suffer injury as a result of Defendants' unconstitutional policies and enforcement conduct.

40.     There is an actual controversy now existing between the Plaintiffs and the Defendant **CITY** concerning the permitting scheme in Fort Lauderdale and the "security perimeter" around the OAS meeting site, including whether and under what conditions a permit will issue, what "security" and insurance costs will be imposed, when a permit will be decided, and whether groups as small as

18

eight (8)  will be subjected to additional restrictions if they are in a public place, to protest with a "common purpose," for more than 30 minutes.  Plaintiffs seek a judicial determination of their rights and duties and a declaration as to defendants' obligations regarding lawful expressive activities.

41.     Plaintiffs plan to engage in expressive activity in the City of Fort Lauderdale, including in the area surrounding the **Center**, in the immediate future. As a result of these unconstitutional ordinance regulating core speech, Plaintiffs reasonably believe that future demonstrations, including those planned for the upcoming **OAS** meeting, will result in constitutional violations.  Absent relief from this Court, Plaintiffs will suffer irreparable harm. Their speech and petition rights, particular their ability effectively to convey their message to the public – will be violated.  Plaintiffs face an actual and concrete threat of imminent future violation of their First Amendment free speech rights.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF FIRST AMENDMENT BY EXCLUSIONARY SECURITY PERIMETER

### By All Plaintiffs Against All Defendants

42.     The allegations of paragraphs 1-30 are incorporated into the Second Claim for Relief as though fully set forth herein.

43.     Defendants' proposed "security perimeter" is a prior restraint and violates the First Amendment as it would bar lawful expressive activity in traditional public fora.

44.     Defendants' proposed "security perimeter" violates Plaintiffs' First Amendment rights as it is not a reasonable time, place or manner regulation.

45.     Defendants' proposed "security perimeter" described above violates Plaintiffs' rights to freedom of speech, freedom of assembly, freedom of association and freedom to petition the government for redress of grievances, all rights protected by the First Amendment and made applicable to the states and local government by the Fourteenth Amendment and 42 U.S.C. §1983.

The acts complained of herein were directed toward intimidating Plaintiffs and others who intend to engage in lawful expressive activity, chilling the exercise of these protected expressive rights by, among other means, deterring Plaintiffs and others from associating in the lawful exercise of their constitutional rights.

46.     As a consequence of these actions, Plaintiffs and others fear they will be impeded in their efforts to carry out lawful expressive activities in conjunction with the OAS meetings and are impeded in their ability to organize for, and carry out, the demonstrations and other activities to protest globalization, job loss and other issues related to the OAS meeting.  They are at risk of not being able to communicate their message if the sweeping "security perimeter" is allowed to be enforced.  Accordingly, Plaintiffs have and will suffer injury as a result of Defendants' unconstitutional policies and enforcement conduct.

## PRAYER FOR RELIEF

Plaintiffs request relief as follows:

1.     A temporary restraining order, preliminary and permanent injunction, enjoining Defendant **CITY**, its officers, agents and employees, from enforcing Fort Lauderdale Municipal Code §§15-181 through15-184; 16-71(8); 16-73; 16-71(b)(1); 24-5; 26-202 and 26-202.1;

2.     A temporary restraining order, preliminary and permanent injunction, enjoining Defendants, their officers, agents and employees, from enforcing the "security perimeter," as presently planned to exclude Plaintiffs from being in sight or sound of the Broward Convention Center;

3.     For a declaration that Defendants' challenged ordinances violate Plaintiffs' rights to free speech, assembly, association and to petition the government for redress of grievances, under the First Amendment to the United States Constitution;

4.     For costs of suit pursuant to 42 U.S.C. §1920 and 42 U.S.C. §1988;

5.     For attorneys' fees pursuant to 42 U.S.C. §1988;

6.     For such other relief as this Court deems just and proper.

DATED: May 19, 2005                          Respectfully Submitted,

                                             _____
                                             ROBERT W. ROSS, JR., FBN 921660

Randall Marshall FBN 0181765                 Robert W. Ross, Jr., FBN 921660
American Civil Liberties Union Foundation    ROSS LAW FIRM, P.A.
   of Florida, Inc.                          728 Belvedere Road, Suite 2     *T. 561- 251- 4896*
4500 Biscayne Boulevard                      West Palm Beach, FL 33405
Miami, FLorida 33137                         T. 561-351-4896; F. 561-241-2790
T. 305 576-2337; F. 305 576-1106             bravelaw@bellsouth.net
rmarshall@aclufl.org

Andrea Costello,  FBN 532991                 Mara Shlackman, FBN 988618
Alice K. Nelson,  FBN 211771                 LAW OFFICES OF MARA SHLACKMAN, P.L.
SOUTHERN LEGAL COUNSEL, INC                  PMB 309
1229 N.W. 12th Avenue                        757 Southeast 17th Street
Gainesville, Florida 32601                   Fort Lauderdale, FL 33316
T. 352-271-8890; F. 352-271-8347             T. 954-523-1131; F. 954-523-1250
andrea.costello@southernlegal.org            mara@shlackmanlaw.com
alice.nelson@southernlegal.org

Zeina N. Salam, FBN 653632                   Carol A. Sobel (Pro Hac Vice)
1260 E. Oakland Park, Suite 200              LAW OFFICE OF CAROL A. SOBEL
Fort Lauderdale, FL 33334                    429 Santa Monica Boulevard, Suite 550
T. 954-736-2140; F. 954-453-3035             Santa Monica, California 90401
zns_law@yahoo.com                            T. 310-393-3055; F. 310-393-3605
Cooperating   Attorney,   American   Civil   carolsobel@aol.com
Liberties Union Foundation of Florida, Inc. -
Broward Chapter

## VERIFICATION

I, TONY FRANSETTA , declare:

1.       I am a member of the Plaintiff FLORIDA ALLIANCE OF RETIRED AMERICANS.  I submitted a declaration in support of the temporary restraining order that sets out the facts set forth in the Complaint and in the Statement of Facts in the Memorandum.  I have personal knowledge of those facts, except for those facts based on information and belief and as to those facts, I believe them to be true.

2.       I have read the Complaint filed in this action and am familiar with the factual matters set forth in the pleading.  I verify that these facts are true and correct.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on May 18, 2005 at Fort Lauderdale, Florida.

_Tony Fransetta_

(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Florida Alliance for Retired Americans, Broward Anti-War Coalition, Broward County Green Party, Green Party of Florida, Haiti Solidarity & Lake Worth for Global Justice

**DEFENDANTS** City of Fort Lauderdale, a municipal entity, and Broward County, a political subdivision of the State of Florida

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

## 05-60813

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert W. Ross, Jr.
ROSS LAW FIRM, P.A., 728 Belvedere Rd., Suite 2, W. Palm Beach, FL 33405

ATTORNEYS (IF KNOWN)

*CIV-MOORE*

*Broward County*

0:05CV60813-Moore

*Garber*

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)   AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | ☐ 900 Appeal of Fee Determination |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS — Third Party | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Complaint for Injunctive and Declaratory Relief for Violations of Civil Rights 42 U.S.C. Sec. 1983 and First Amendment

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES ☒ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   5/19/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 534176   AMOUNT 250.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse
(Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs – Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of the filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.   Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**V.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in **Section IV** above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.